UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Terrance Lombard,

    Plaintiff,

v.                                                         Case No. 07-10850

UAW International Union and Local 174,       Honorable Sean F. Cox

    Defendants.

_____/

**OPINION & ORDER**
**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff previously filed a hybrid suit under § 301 of the Labor Management Relations Act ("LMRA"), asserting that his former employer discharged him in violation of an applicable collective bargaining agreement and that the Union Defendants failed to fairly represent him by withdrawing his grievance and refusing to demand arbitration without a rational basis for doing so. (Civil Action No. 05-72501). In an Opinion & Order dated December 13, 2006, this Court: 1) dismissed Plaintiff's claim against his former employer because the claim was barred by the applicable statute of limitations; and 2) dismissed Plaintiff's claims against the Union Defendants, without prejudice, because Plaintiff had not yet exhausted his internal union remedies with respect to his claims against the Union Defendants.

After exhausting his internal union remedies, Plaintiff filed this action, renewing his claims against the Union Defendants. The matter is currently before the Court on Defendants' Motion for Summary Judgment. The parties have fully briefed the issues and the Court heard oral argument on January 31, 2007. For the reasons set forth below, the Court concludes that

1

Plaintiff cannot satisfy his very high burden of establishing that the Union Defendants breached their duty of fair representation. Accordingly, the Court shall GRANT Defendants' motion.

BACKGROUND

A.	Case No. 05-72501:

In Case No. 05-72501, Plaintiff Terrance Lombard ("Lombard" or "Plaintiff") filed suit against his former employer, Chrome Craft Corporation ("Chrome Craft"), and his unions, UAW International Union and Local 985 (formerly Local 174) (collectively "the Union Defendants"). Case No. 05-72501 was a hybrid suit under § 301 of the Labor Management Relations Act ("LMRA"), wherein Plaintiff asserted that Chrome Craft discharged him in violation of an applicable collective bargaining agreement and that the Union Defendants failed to fairly represent him by withdrawing his grievance and refusing to demand arbitration without a rational basis for doing so.

In an Opinion & Order dated December 13, 2006 (copy attached), this Court: 1) granted a Motion to Dismiss filed by Plaintiff's former employer because Plaintiff's claims against it were barred by the applicable statute of limitations; and 2) dismissed Plaintiff's claims against the union defendants without prejudice because Plaintiff had not yet exhausted his internal union remedies with respect to his claims against the Union Defendants.[1]

---

[1]Although dicta (because the opinion dismissed the claims against the Union Defendants for failure to exhaust), the opinion also indicated that there appeared to be factual disputes, and that Plaintiff asserted that union officials told witnesses to change their statements and, therefore, it appeared that there would be a genuine issue of material fact as to the merits. The parties now both agree, however, that there is no evidence to indicate that any witnesses were asked to change their stories.

B.  Case No. 07-10850:

After exhausting his internal union remedies, on February 27, 2007, Plaintiff filed this action against Chrome Craft, UAW International Union and Local 174. Plaintiff filed an amended complaint on March 26, 2007, wherein he dropped Chrome Craft as a Defendant. Accordingly, Plaintiff's only remaining claim is that the Union Defendants "failed to fairly represent Plaintiff by withdrawing his grievance and refusing to demand arbitration without a rational basis." (*See* Pl.'s Am. Compl. at ¶ 12).

The parties agreed that discovery from Case No. 05-72501 could be used in this action. The parties mutually requested, however, a period for additional discovery in this action, and agreed on a deadline for filing dispositive motions in this second action. (*See* Docket Entry No. 9).

C.  Factual Background:

Chrome Craft is an automotive supplier in Highland Park, Michigan. Plaintiff was employed by Chrome Craft from May 26, 1998, until he was discharged on or about August 15, 2003. At all relevant times, Plaintiff was a member of, and was represented by, the Union Defendants. Plaintiff's claim stems from his discharge and events that followed.

It is undisputed that on August 8, 2003, Plaintiff was involved in an "altercation" with his supervisor, Mike Owens. (Defs.' Statement of Material Facts Not in Dispute, and Pl.'s Response to same, at ¶ 1). Plaintiff admits he had an altercation with Owens, that included the two men yelling at each other and calling each other "motherfuckers," but denies that he physically struck or threatened Owens during the altercation.

Because it occurred on the line, there were many witnesses to the August 8, 2003

altercation, including supervisory employees Mike Owens ("Owens") and Roosevelt Black ("Black"), as well as many hourly employees. No union representatives witnessed the altercation. (Defs.' Statement of Material Facts Not in Dispute, and Pl.'s Response to same, at ¶ 3).

Shortly after the incident, on August 10, 2003, Black sent a written statement to Chrome Craft's General Manager John Cueny ("Cueny") that described his account of the altercation. Black stated, in pertinent part, that:

> At this time Terrance came up and said, 'Fuck, Chrome Craft and Fuck all these supervisor's especially line one supervisor's'. Then Mike told Terrance that he can go home if he didn't like it and after saying that Mike and Terrance approached each other and got forehead to forehead, nose to nose yelling and screaming at each other. Terrance at this time grabbed Mike by the throat with his right hand and pushed him away from him. At this time I stepped in and grabbed Mike to keep them separated. Then Charles Cain grabbed Terrance and said, 'You lucky we don't Fuck you up punk'! Then Mike said to Terrance and Charles that both of them can go home. When he said that Terrance said 'If I lose my job, then Mike will lose his life.'

(Ex. 12 to Def.'s Br.). Black's August 10, 2003 statement also indicates that the police were called and took a statement from Owens after they arrived. (*Id.*). Owens also submitted a written statement after the altercation, indicating that Plaintiff threatened him and grabbed him by the throat. (*Id.*).

Chrome Craft conducted an investigation, collecting written statements from supervisors and interviewing various employees. (Defs.' Statement of Material Facts Not in Dispute, and Pl.'s Response to same, at ¶ 4; Cueny Dep. at 59).

Plaintiff was suspended and then discharged on August 18, 2003, for violating Shop Rule No. 6 (Collective Bargaining Agreement, Article XIII, Section I)(Ex. 1 to Defs.' Br.), which prohibits "fighting or attempting bodily injury, threatening fellow employees on Company

4

property." Violation of that rule is subject to discipline of three days off up to discharge for a first offense. (Defs.' Statement of Material Facts Not in Dispute, and Pl.'s Response to same, at ¶ 2).

Antwine Riggs ("Riggs"), a representative of the local union, testified that he interviewed various employees who witnessed the altercation and received differing accounts. Riggs testified that Owens told him that Plaintiff "grabbed him around the neck and tried to choke him." (Riggs Dep. at 37). He also stated that at one point Black told him that Plaintiff pushed Owens around the neck, but that at another point Black said that he did not. (*Id*.). Riggs testified that some witnesses said that Owens and Lombard were "chest to chest and their heads touching" (Riggs Dep. at 37-38). He also testified that Clarence Byrd told him that Plaintiff pushed Owens but did not state whether or not Plaintiff threatened Owens. (*Id*. at 40). Riggs testified that other witnesses he spoke to stated that Plaintiff did not push Owens. (*Id*.).

Plaintiff's brother, Toby Lombard, was also employed at Chrome Craft. Following Plaintiff's termination, Toby Lombard obtained written statements from 4 witnesses, who were temporary employees at the time:

- Marcellus Washington ("Washington"), who stated that Plaintiff and Owens were arguing and that "[a]s they argued they approached one another," and that "[a]t no time did I witness Terrance or Mike touching one another."

- Kelvin Smith ("Smith"), who stated that he saw Plaintiff and Owens "face to face argue" before Black stepped in between them.

- Dan Wroblewski ("Wroblewski"), who stated that the two men argued "face to face" and it was not one or the other that moved they move at the same time and then they were face to face no punches were thrown. Then [Black] got between them."

- Charles Cain, who stated that there was yelling, that Owens "walked up in Terrance face and threatened his job," and then he and Black got in between them.

5

(Ex. 9 to Pl.'s Br.).

Under the applicable collective bargaining agreement ("CBA"), there is a five-step grievance procedure that culminates in binding arbitration. (*See* Ex. 7 to Pl.'s Br., at 3-4). The steps can be summarized as follows: 1) the employee takes a complaint to his or her foreman; 2) if not settled promptly by the Bargaining Committee and foreman, the grievance is reduced to writing; 3) if not settled at this stage, the Bargaining Committee, Local Union and International Union and Company Representatives meet; 4) if not settled, the parties use a federal and/or state mediator to try to resolve the dispute; 5) if not settled, the matter can be submitted to binding arbitration.

On August 20, 2003, the local union filed a grievance on Plaintiff's behalf. (Defs.' Statement of Material Facts Not in Dispute, and Pl.'s Response to same, at ¶ 21). The grievance proceeded through the grievance procedure until the next-to-last step, an attempt to settle the case at mediation. This mediation procedure, however, is non-binding and either party may reject the mediation proposed. (Defs.' Statement of Material Facts Not in Dispute, and Pl.'s Response to same, at ¶ 22).

International Representative Frank Woods ("Woods") presented Plaintiff's case at mediation. In preparation for the mediation, Woods asked Plaintiff if he had any prior discipline relating to threatening/fighting. Plaintiff denied any such prior discipline. (Defs.' Statement of Material Facts Not in Dispute, and Pl.'s Response to same, at ¶ 23).

Woods presented the Union's case on behalf of Plaintiff at the mediation. He argued that Chrome Craft had been "stonewalling"the Union on this case and had not turned over all relevant information to it. (Woods Dep. at 45). Woods argued that the penalty given to Lombard was too

6

severe and that Plaintiff's lack of prior incidents should mitigate against discharge. (*Id*.). Chrome Craft, however, did have documents that it presented showing that Plaintiff had prior discipline incidents. (*See* Ex. 13 to Defs.' Br.). Woods testified that he did not present the statements from Washington, Smith, Wroblewski or Cain at the mediation because he did find them credible or consistent. (Woods Dep. at 47, 63-64).

Federal Mediator James Statham and State Mediator Ed Phillips presided at the mediation. (Defs.' Statement of Material Facts Not in Dispute, and Pl.'s Response to same, at ¶ 25). After mediation failed to resolve the matter, Woods had to make a decision as to whether or not to proceed to arbitration.

Woods ultimately decided against arbitration. Woods notified Plaintiff of his decision by letter dated February 24, 2004 which stated that "due to the nature of and circumstances involved including the rise of violence in the workplace, the Union will not pursue this grievance to Step 5 of arbitration." (Defs.' Statement of Material Facts Not in Dispute, and Pl.'s Response to same, at ¶ 30).

During his deposition, Woods testified that it was his judgment that the Union would be unlikely to win at arbitration and that a number of factors went into his decision, including the nature of the grievance, the opinions of the mediators, a lack of evidence, and that there were prior incidents on Plaintiff's record as far as work place violence. (Woods Dep. at 79-80).

Lombard protested the withdrawal of his grievance. Under the Union Constitution, a member has the right to appeal the Union's decision to withdraw a grievance and/or its decision not to proceed to arbitration. Lombard filed an internal appeal and the appeal was granted on January 3, 2005. (Ex. 15 to Pl.'s Br.) The appeal decision stated that "the Union's decision to

settle [Lombard's grievance] was not properly investigated in order to make a rational decision."
(*Id*. at 6). Because the applicable CBA does not contain a reinstatement provision, the Union Defendants requested that Chrome Craft voluntarily agree to allow it to reinstate Plaintiff's grievance. Chrome Craft responded in writing, stating that it has no obligation to allow the reinstatement and that it was denying the Union's request to voluntarily reinstate Plaintiff's grievance. Plaintiff was notified in writing on February 14, 2005, that Chrome Craft had denied requests to voluntarily reinstate the grievance.

Plaintiff then initiated a further internal appeal with the Union. On November 15, 2006, the Public Review Board of the International Union, UAW ("the PRB") issued a decision denying Plaintiff's appeal, stating, in pertinent part:

> Although the International Representative's initial handling of Lombard's grievance was flawed, the IEB insisted upon a thorough investigation and evaluation of Lombard's chances of gaining reinstatement through arbitration, and that investigation was ultimately completed by the President's staff. The Union has provided a convincing rationale for its conclusion that no further relief could have been obtained for Lombard from his employer based on an evaluation of the bargaining climate at this location and the entire record developed in connection with Lombard's grievance and appeal. Lombard has not demonstrated that the Union's conclusion was irrational or improperly motivated and so he has not established that he is entitled to be compensated by the Union for his loss.

(Ex. 16 to Pl.'s Br. at 17-18). In order to exhaust his internal union remedies, Plaintiff also filed a Motion for Reconsideration that was subsequently denied.

During this litigation, in Case No. 05-72501, Washington, Cain, Wroblewski[2] and Smith provided affidavits stating that Plaintiff did not touch Owens. (*See* Pl.'s Ex. 9). Washington's Affidavit states that he never told Stewart that Plaintiff touched Owens. Wroblewski's affidavit

---

[2]During his deposition, however, Wroblewski testified that Plaintiff and Owens walked into each other or bumped into each other. (Wroblewski Dep. at 21).

states that no one from the Union ever asked him questions about his statement or asked him about what he saw. Smith's affidavit states that he never told anyone that his written statement was not true. (*Id.*).

Stewart testified that Washington, Smith, and Wroblewski, who were all temporary employees at the time, told him during his investigation that they saw Plaintiff choke Owens. (Stewart Dep. at 18-19).

## ANALYSIS

The Sixth Circuit has explained that a hybrid § 301 action involves two constituent claims: 1) breach of a collective bargaining agreement by the employer and 2) breach of the duty of fair representation by the union. *Garrison v. Cassens Transport Co.*, 334 F.3d 528, 538 (6th Cir. 2003). The two claims are "inextricably interdependent" because unless a plaintiff establishes both violations, he cannot succeed against either party. *Id.*

Here, Plaintiff originally brought his hybrid § 301 action against both his employer and his unions, but the employer was subsequently dismissed. The fact that Chrome Craft (the employer) is no longer a party to the action is of no consequence because in a hybrid § 301 suit, an employee may "sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *Garrison,* 334 F.3d at 538 n.8.

A union owes employees a duty to represent them adequately as well as honestly and in good faith. "There is no requirement, however, that the grievance process be 'error-free.'" *Id*.

In order to prove a breach of the duty of fair representation, an employee must demonstrate that the union's actions or omissions during the grievance process were arbitrary, discriminatory, or in bad faith. *Garrison*, 334 F.3d at 538 (citing *Vaca v. Sipes*, 386 U.S. 171,

9

190 (1967)). "Each of these wrongs is mutually independent, meaning, that 'the three named factors are three separate and distinct possible routes by which a union may be found to have breached its duty.'" *Garrison,* 334 F.3d at 538 (citing *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 583 (6th Cir. 1994)).

While judging whether a union has acted discriminatorily or in bad faith ordinarily presents a simple and straightforward issue, with respect to an allegation of arbitrariness, the issue is more complex. *Black*, 15 F.3d at 584. As will be explained in more detail below, the plaintiff must establish "extreme arbitrariness" on the part of the union. *Id.*

Thus, in order to succeed on his hybrid § 301 claim in this action, Plaintiff must show: 1) that the Union Defendants breached their duty of fair representation in the handling of Plaintiff's grievance, either through discrimination, bad faith, or extreme arbitrariness; and 2) that Chrome Craft breached the CBA by discharging him without good cause. In addition, Plaintiff also needs to show that the Union's actions tainted the grievance procedure such that the outcome was more than likely affected by the Union's breach. *Id.* at 585; *Dushaw v. Roadway Express, Inc.*, 66 F.3d 129, 132 (6th Cir. 1995). "The impact of the breach on the outcome must, moreover, have been substantial; to establish a breach of fair representation, the plaintiff must meet the onerous burden of proving that the grievance process was 'seriously flawed by the union's breach of its duty to represent employees honestly and in good faith and without invidious discrimination or arbitrary conduct.'" *Black*, 15 F.3d at 585. "Thus, if a union fails to present favorable evidence during the grievance process, this failure may constitute a breach of its duty only if that evidence probably would have brought about a different decision." *Id*.

In their Motion for Summary Judgment, the Union Defendants seek summary judgment

on numerous grounds. They first assert, however, that summary should be granted in their favor because Plaintiff cannot establish a breach of the duty of fair representation by the Union Defendants.

I. <u>Has Plaintiff Presented Sufficient Evidence To Establish That The Union Defendants Breached Their Duty Of Fair Representation?</u>

As stated above, there are three separate and distinct possible routes by which a union may be found to have breached its duty: 1) bad faith; 2) discrimination; or 3) arbitrariness.

Here, Plaintiff's complaint alleges only that the Union Defendants "failed to fairly represent Plaintiff by withdrawing his grievance and refusing to demand arbitration without a rational basis." (*See* Pl.'s Am. Compl. at ¶ 12). Thus, Plaintiff's complaint alleges arbitrariness (*i.e.*, that the Union Defendants acted "without a rational basis.") Plaintiff's complaint does not allege that the Union Defendants acted discriminatorily or in bad faith.

Nevertheless, because Plaintiff's Response Brief contains references to bad faith, the Court will address both the bad faith and arbitrariness routes.

A. <u>Bad Faith</u>:

Defendants contend that Plaintiff cannot establish that the Union Defendants were motivated by bad faith. Defendants note that Plaintiff testified that he was friendly with local Committeeperson Riggs and that Plaintiff had no reason to think that Riggs had any hostility towards him and no reason to think that he would not want to work on Plaintiff's grievance. (Pl.'s Dep. at 39-40). They also state that Plaintiff "admits that he has no reason to believe that Frank Woods or anybody else at the International Union, UAW, or anyone at the Public Review Board, has any hostility toward him." (Def.'s Br. at 13). Defendants further contend that Plaintiff's testimony that he signed a petition relating to Stewart at some unknown point in time

11

is insufficient to establish "bad faith," especially when Plaintiff testified that he has no evidence that Stewart had it out for him. (Pl.'s Dep. at 40-41).

In response, Plaintiff does not dispute that he has no evidence to establish that the International Union acted in bad faith.

He asserts, however, that he has evidence to establish that one individual in the local union acted in bad faith. Plaintiff states that Defendants are ignoring "the evidence that Chief Steward, Carey Stewart, misrepresented what Messrs Washington, Smith and Wroblewski told him. The stark and total disparity between Mr. Stewart's testimony and the affidavits of the witnesses would provide ample evidence that Stewart was acting in bad faith when he told Mr. Woods that the witnesses had hold him that Mr. Lombard had choked Mr. Owens." (Pl.'s Br. at 14). Plaintiff also states that "a jury could consider the fact that [he] had signed a petition to remove Mr. Stewart as the Chief Steward as evidence of bad faith or bias." (Pl.'s Br. at 14).

The Court concludes that Plaintiff has not produced sufficient evidence to establish that either of the challenged decisions by the Union Defendants were motivated by bad faith. When he was deposed in this action, Plaintiff's testimony relating to Stewart was as follows:

> Q. What about Mr. Stewart, did you ever see him socially?
> A. Yes.
> Q. Any reason to think he would have any hostility towards you?
> A. Maybe.
> Q. Why?
> A. Well, I know there was a point in time that a lot of union brothers didn't feel Cary Stewart was doing his job.
> Q. Okay.
> A. So we signed a petition.
> Q. When was that?
> A. I don't remember.
> . . . .
> Q. Did he ever raise that issue with you when you were talking about your grievance?

      A.       No.
      Q.       Do you have any evidence that he had it out for you?
      A.       No.

(Pl.'s Dep. at 40-41). Thus, Plaintiff testified that he may suspect bad faith, but had no actual evidence to substantiate his speculation. A reason why one might be suspected of bad faith is not a substitute for factual evidence of the alleged bad faith. *Sears v. Automobile Carriers*, 526 F.Supp. 1143 (E.D. Mich. 1981).

Moreover, the Court does not believe that a reasonable jury could conclude that Plaintiff's testimony that he signed a petition relating to Stewart on some unknown date, without more, such as evidence that Stewart actually saw that petition or noticed Plaintiff's signature on it, is enough to establish that Defendants were motivated by bad faith.

The Court also finds Plaintiff's position that bad faith is established here by disparity between Stewart's deposition testimony and that of Washington, Smith or Wroblewski as to discussions between them. The Sixth Circuit has explained that "an affirmative showing by plaintiff that the Union's action or inaction was motivated by bad faith is required." *Whitten v. Achor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975). Plaintiff's complaint alleges that the Union Defendants failed to fairly represent him by taking the following actions without a rational basis for doing so: 1) withdrawing his grievance; and 2) refusing to demand arbitration. It is undisputed that Woods – not Stewart – made the decision to withdraw Plaintiff's grievance and the decision not to demand arbitration. Plaintiff has presented no evidence to show that personal animosity was behind either of those two challenged decisions.

Accordingly, the Court concludes that the evidence presented by Plaintiff to support the

allegations of bad faith in his brief,[3] is insufficient to avoid summary judgment.

B.  Arbitrariness:

With regard to the arbitrary prong, a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a "wide range of reasonableness" as to be irrational. *Garrison*, 334 F.3d at 538. "Mere negligence on the part of a union does not satisfy this requirement." *Id*. "Moreover, ordinary mistakes, errors, or flaws in judgment also will not suffice." *Id*. Thus, an "unwise or even an unconsidered decision by the union is not necessarily an irrational decision." *Id*. "In essence then, to prevail, a plaintiff has the difficult task of showing that the union's actions were 'wholly irrational.'" *Id.* (Internal citations omitted). "The 'wholly irrational' standard is described in terms of 'extreme arbitrariness.'" *Id*. Moreover, the Sixth Circuit has cautioned that in reviewing a union representative's actions or omissions, the court "must never lose sight of the fact that union agents are not lawyers, and as a general proposition, cannot be held to the same standard as that of licensed professionals." *Id*. at 539.

Here, Plaintiff's complaint alleges that the Union Defendants "failed to fairly represent Plaintiff by withdrawing his grievance and refusing to demand arbitration without a rational basis." (Pl.'s Am. Compl. at ¶ 12).

Plaintiff contends that he has produced sufficient evidence from which a jury could conclude that the Union Defendants' actions were arbitrary. Plaintiff relies on *Schoonover v. Consolidated Frightways, Corp.*, 147 F.3d 492 (6th Cir. 1998) and *Black*, 15 F.3d 573. Plaintiff asserts that "the Unions' explanation for its decision to withdraw Mr. Lombard's grievance raises

---

[3]Plaintiff's complaint contains no allegations of bad faith whatsoever.

genuine issues of material fact which preclude summary judgment" and that there is ample evidence "from which a jury could reject Defendant Unions' explanation as not worthy of belief." (Pl.'s Br. at 13).

In response, Defendants acknowledge that there are factual disputes about exactly what happened between Plaintiff and Owen on the night of the altercation at Chrome Craft. Defendants stress that the question before the Court is not whether a reasonable jury could believe that Plaintiff was not "fighting" or "threatening" Owen that night, but rather, the sole issue before the Court is whether a reasonable jury could conclude that the Union acted in a "wholly irrational" manner in deciding to withdraw his grievance and not pursue arbitration.

Defendants note that while Plaintiff claims that his grievance had merit, even Plaintiff does not claim that there was only one side to the story. Even if the Union had statements from Washington, Smith, and Wroblewski stating that they did not see Plaintiff touch Owen during the altercation, it is undisputed that the Union had statements from other individuals indicating otherwise (*e.g.*, Owen, Byrd, etc.). Thus, even when all evidence is viewed in the light most favorable to Plaintiff, the Union had conflicting evidence regarding the incident and had to make a judgment call as to Plaintiff's grievance.

Defendants contend that neither *Schoonover* nor *Black* support Plaintiff's position because both cases can be easily distinguished from the facts here.

The Court agrees.

As Defendants correctly noted in their brief, it is well established that a union is not obligated to take all member grievances to arbitration. *See e.g., Vaca v. Snipes*, 386 U.S. 171, 191 (1967). "A union is expected to exercise discretion in deciding whether to process a

grievance" and the duty of fair representation "does not require that a union fully pursue every grievance filed." 48 AM. JUR. 2D *Labor and Labor Relations* § 1085; *Driver v. United States Postal Service, Inc.*, 328 F.3d 863, 869 (6th Cir. 2003).

A union's decisions on whether and how to pursue an employee's grievance are entitled to deference. *Blessing v. United Steel*, 244 Fed.Appx. 614, 621 6th Cir. 2007). "A union's decision not to pursue a grievance that it deems lacks merit is not actionable as long as its determination was made in good faith." *Id.* The union's actions are not be considered arbitrary unless they are "so far outside a wide range of reasonableness" as to be wholly irrational. *Id.* "This standard 'gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong.'" *Jones v. United Postal Service*, 462 F.Supp.2d 800, 809 (E.D. Mich. 2006)(citing *Marquez v. Screen Actors Guild*, 525 U.S. 33, 45-46 (1998)).

Here, when faced with conflicting evidence regarding the incident at issue, and documents from Chrome Craft indicating that Plaintiff had prior incidents related to workplace violence in the past, Woods made the judgment call to withdraw the grievance after mediation failed to resolve the matter. He also made a judgment call in deciding not to pursue arbitration. Woods testified that, in his judgment, the Union would be unlikely to win at arbitration and that a number of factors went into his decision, including the nature of the grievance (*i.e.*, that it involved workplace violence), the opinions of the experienced mediators, a lack of unsubstantiated evidence, and that there were prior incidents on Plaintiff's record that related to work place violence. (Woods Dep. at 79-80). Woods also testified that he had previously pursued arbitration on behalf of an employee who had been involved in an altercation with another employee where the two men "got nose to nose, face to face" arguing at work. He

16

testified that although the employee at issue did not strike his co-worker, the union still lost the case. (Woods Dep. at 33-34).

The Court agrees that Plaintiff has not met his burden of establishing that sufficient evidence exists such that a reasonable jury could conclude that the Unions' decision to withdraw his grievance, and its decision not to demand arbitration, were "wholly irrational."

Moreover, this case can be readily distinguished from *Schoonover* and *Black*.

*In Schoonover,* the plaintiff presented evidence to establish that his supervisors "set him up" and then fabricated evidence to assure his dismissal. The majority also concluded that the plaintiff presented evidence to show that the union's representation at the arbitration was, for numerous case-specific reasons, perfunctory. Even under those facts, however, the decision was not unanimous. The dissent concluded that, even in the light most favorable to plaintiff, the evidence presented by plaintiff did not satisfy his high burden. The dissent concluded that, at most, the unions' failures were negligence or bad judgment, neither of which is enough to constitute the breach of the duty of fair representation.

In *Black*, there was substantial evidence presented of animosity between the plaintiff and the union. In addition, the evidence submitted indicated that the union failed to call, or even interview, the one and only witness who could have effectively and objectively corroborated the plaintiff's testimony on a vital matter. The plaintiff also presented testimony to show that the testimony of that witness would have in fact made the employer reconsider its decision to discharge the plaintiff. Finally, as Plaintiff acknowledges, the plaintiff in that case presented evidence of bad faith.

Unlike either of those cases, there is no evidence before this Court to establish that either

17

of the two challenged decisions were motivated by bad faith. Moreover, unlike the situation seen in *Black,* this is not a case where the union failed to even interview the one and only witness who could have effectively and objectively corroborated the plaintiff's version of events. To the contrary, even Plaintiff acknowledges that there were numerous witnesses to the event and the testimony of witnesses conflicted.

Accordingly, the Court concludes that Plaintiff cannot met his high burden of presenting sufficient evidence from which a reasonable jury could conclude that the Union Defendants breached their duty of fair representation. His claim therefore fails and Defendants are entitled to summary judgment.[4]

## CONCLUSION & ORDER

For the reasons above, **IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's complaint is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: February 7, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 7, 2008, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager

---

[4] Given this conclusion, it is unnecessary for the Court to analyze Defendants' remaining arguments in support of their motion.